LEW DAVID DAILEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dailey v. Commissioner
Docket No. 25599-82.
United States Tax Court
T.C. Memo 1985-169; 1985 Tax Ct. Memo LEXIS 461; 49 T.C.M. (CCH) 1159; T.C.M. (RIA) 85169; April 4, 1985. Lew David Dailey, pro se. Mark A. Pridgeon, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined the following deficiencies in, and additions to, the petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(b)
Sec. 6654 [1]
1979
$3,867.60
$1,933.80
$145.62
1980
4,126.34
2,063.17
14.34
*462 The issues for decision are: (1) whether the wages received by petitioner in the years 1979 and 1980 are taxable; (2) whether petitioner is liable for additions to tax for fraud under section 6653(b); and (3) whether petitioner is liable for additions to tax for failure to pay estimated income tax under section 6654. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Brainerd, Minnesota when he filed his petition in the instant case. Petitioner was employed by Northwestern Bell Telephone Company during the years 1972 through 1980. Petitioner filed joint Federal income tax returns for the taxable years 1972, 1973, and 1974 while married to Roxanne Dailey. On the joint returns, petitioner's wages from the telephone company are reported and Forms W-2 are attached. Petitioner and Roxanne Dailey were separated in 1974 and obtained a divorce before the conclusion *463 of the taxable year 1975. During 1979 and 1980, the taxable years at issue, petitioner received wages from the telephone company in the following amounts: Year
Amount
1979
$20,090
1980
20,851
On May 16, 1979, petitioner filed an Employee's Withholding Certificate (Form W-4) with his employer, the telephone company. On this form, petitioner claimed he was exempt from withholding and certified, under penalties of perjury, that he incurred no liability for Federal income tax for the past year and anticipated incurring no liability for Federal income tax for the present year. The telephone company issued a Form W-2 to petitioner setting forth the wages petitioner had received from the telephone company for 1979 and 1980. Petitioner received copies of these documents within a month after the expiration of the taxable year to which each Form W-2 applied. Petitioner did not file Federal income tax returns for the taxable years of 1979 and 1980. It has been stipulated that petitioner received wages from the telephone company for the years 1975 through 1978 in the following amounts: Year
Amount
1975
$15,453.89
1976
11,014.16
1977
18,336.39
1978
20,325.63
*464 On December 29, 1975, petitioner filed with his employer an Exemption from Witholding Certificate (Form 4E) in which he certified that he had no income tax liability for the past year, 1974, and anticipated none for the current year, 1975.A similar certificate was filed twice in 1976. On July 25, 1977, petitioner filed with the telephone company a Form W-4 certifying he was eligible for exemption from withholding. Similar Forms W-4 were filed again in 1977 and 1978. On April 11, 1976, petitioner attended a meeting in Chicago, Illinois, sponsored by the Libertarian Party. One of the speakers during the session was a John Matonis who was introduced as a tax lawyer. After the speech, petitioner arranged to have lunch with Mr. Matonis to discuss the matters in his speech. Mr. Matonis told petitioner that petitioner's wages were not taxable because petitioner's exchange of time was equal to the amount of money he got back, and, therefore, petitioner did not owe any income tax. Petitioner, at Mr. Matonis' urging, purchased two appellate briefs filed by Mr. Matonis in U.S. Courts of Appeals in two unrelated criminal tax cases. Petitioner had no further contact with Mr. Matonis after *465 April 1976. Petitioner made no effort to determine whether Mr. Matonis was qualified to practice law. Petitioner never sought any other opinion as to the validity of Mr. Matonis' statements that wages are not taxable. Petitioner and Mr. Matonis never established an attorney-client relationship. At least part of petitioner's underpayment of tax for each of the years 1979 and 1980 was due to fraud with the intent to evade tax. OPINION 1. Deficiencies
Petitioner's sole argument contesting respondent's determination of the deficiencies is that wages are not subject to income tax. This argument is clearly without merit. It has been consistently held on numerous occasions that wages constitute taxable income under section 61(a). ; . The deficiencies as determined by respondent are sustained. 2. Fraud
Respondent maintains that petitioner is liable for additions to tax due to fraud under section 6653(b). Respondent bears the burden of proving, by clear and convincing evidence, that there is an underpayment of tax and that some part of *466 this underpayment for each year is due to fraud. Section 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes. . The existence of fraud is a question of fact to be determined upon consideration of the entire record. , affd. without published opinion . Fraud is never presumed. . Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available.The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; . Respondent has carried his burden of proving that there are underpayments. The record contains persuasive evidence, unchallenged as to amount by petitioner, that petitioner had substantially all *467 the income respondent had determined in the notice of deficiency in an amount sufficient to produce underpayments for 1979 and 1980. Respondent has carried his burden of proving that the underpayments were due to fraud. Petitioner understood his obligation to file tax returns and pay income taxes on wages, as shown by his filing returns and reporting his wages from the telephone company for the years 1972 through 1974. Petitioner failed to file income tax returns for 1979 and 1980. Petitioner filed a Form W-4 with his employer claiming that he was exempt from income tax withholding even though he had earned sufficient income the past years to incur a tax liability and could anticipate incurring tax liability for 1979 and 1980. The steps petitioner took to stop the payment of income taxes through the withholding system together with his failure to file an income tax return, enabled petitioner to avoid payment of income taxes that he understood he was obligated to pay.Filing false Forms W-4 are affirmative acts of fraud. . To excuse his conduct, petitioner made at trial the same two arguments that he made *468 to this Court in , another case involving petitioner with respect to the years 1975 through 1978. Petitioner argued that he filed the withholding certificate for the year 1975 because he was afraid of losing his job. Petitioner, however, was not fired but still did nothing to correct the erroneous withholding certificate. Petitioner next contended that he relied on "advice of counsel" that wages are not taxable when he filed false Forms W-4 and failed to file returns. He referred to the speech given by Mr. Matonis in April 1976 followed up by his luncheon meeting and the purchase of the two appellate briefs. However, no attorney-client relationship was established. Petitioner made no attempt to verify Mr. Matonis' qualifications. As this Court stated in :
[Petitioner's] reliance on the speech of the alleged "tax lawyer" as being the advice of counsel is nothing more than a frivolous attempt to draw the cloak of respectibility over a course of action which petitioner had already determined to embark upon--note that the first filing of his false withholding certificate, *469 for the year 1975, was done some months before he ever heard that speech. We do not think that petitioner was concerned about the accuracy of the statements made by the speaker, nor whether the speaker had the necessary qualifications to give opinions on the law which should be believed. We think that petitioner simply sought someone who would say what he wanted to hear, and then seized upon it. We find the foregoing language applicable here. 3. Section 6654
Petitioner bears the burden of proving that respondent erred in determining petitioner is liable for additions to tax under section 6654. Rule 142(a). Petitioner made no attempt to carry his burden and introduced no evidence that would show respondent's determination is incorrect. We sustain respondent's determination. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect during the years at issue and all rule references are to the Tax Court Rules of Practice and Procedure.↩